IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY L. KROH**, administrator of the estate of April M. Erdman, | : : : | CIVIL ACTION NO. 1:07-CV-0686 |
| Plaintiff | : : | (Judge Conner) |
| v. | : : | |
| **NORFOLK SOUTHERN RAILWAY COMPANY** and **NORFOLK SOUTHERN CORPORATION**, | : : : : : | |
| Defendants | : | |

## MEMORANDUM

The instant matter arises from a collision between a vehicle driven by plaintiff's decedent, April Erdman ("Erdman") and a locomotive operated by defendants Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively "Norfolk Southern") at a private railroad crossing in Dalmatia, Pennsylvania. Presently before the court is defendants' motion in limine (Doc. 55) to exclude evidence that of a prior fatal accident at the crossing and that vegetation was removed from the area surrounding the crossing after the collision. They also seek to preclude Norfolk Southern supervisor Jerry Marcum ("Marcum") from testifying about training that Norfolk Southern engineers receive on sounding a

locomotive's horn, and they request exclusion of all testimony regarding the duty of care that a railroad owes to a whistle horn when approaching a private crossing.[1]

### A. Vegetation Removal

Defendants move to preclude evidence of vegetation removal from the areas surrounding the crossing after the collision. Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. All relevant evidence is admissible unless otherwise excluded by federal law. Id. R. 402. Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Id. R. 403.

Relevant evidence may also be excluded if it demonstrates that, following an injury, a party took remedial measures that would have decreased the likelihood of the injury's occurrence had they been performed prior to the harm. Id. R. 407. Such evidence is inadmissible to establish liability. Id.; Diehl v. Blaw-Knox, 360 F.3d 426, 429-30 (3d Cir. 2004). Nevertheless, subsequent remedial measures may be admitted for purposes other than assigning liability, including "proving

---

[1]Defendants also challenge the relevance of testimony of Gregory Bell ("Bell"), one of plaintiff's expert witnesses. Bell's testimony is subject to a pending motion in limine that defendants have filed under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). At the pretrial conference, the parties and the court agreed that the Daubert motion would be resolved during the week of trial. The court will therefore defer ruling on the relevance of Bell's testimony until the disposition of Daubert issues. Defendants will be instructed to renew the motion in limine at the Daubert hearing.

ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." FED. R. EVID. 407.

Here, defendants seek to bar evidence of vegetation removal to suggest that the collision would not have occurred had they pruned it prior to the accident. Use of evidence in this manner is inappropriate under Rule 407. The motion in limine will be granted insofar as it seeks to exclude evidence of vegetation removal in plaintiff's case-in-chief.

Plaintiff contends, however, that he may offer the evidence as rebuttal if defendants claim either that vegetation removal was infeasible prior to the accident or that they were unable extract it because they lacked ownership of or a right-of-way over the land where it was growing. Removal of vegetation may be probative of such issues at trial. The court will therefore defer ruling on the admissibility of vegetation removal for these purposes and will instruct plaintiff's counsel to request a sidebar conference prior to presenting it on cross-examination.

### B.   Prior Accidents

Defendants seek to exclude evidence of a prior accident that occurred at the same railroad crossing approximately twelve years prior to the collision involving Erdman. Prior accidents may be admitted to demonstrate that a party possessed notice of a particular risk of harm. See Evans v. Pa. RR Co., 255 F.2d 205, 209-10 (3d Cir. 1958). "[T]he previous injury should be such as to attract the defendant's attention to the dangerous situation which resulted in the litigated accident." Id. at 210. The prior accident need not be identical to the subsequent injury, but the two

must share "a basic similarity of conditions and facts" such that the former incident alerted the defendant to a danger that found fruition in the later injury. Rice v. Skytop Lodge Corp., No. Civ.A. 3:00-2243, 2002 WL 799849, at *1 (M.D. Pa. 2002); Klein v. Nat'l RR Passenger Corp., No. Civ.A. 04-955, 2008 WL 879968, at *16-17 (E.D. Pa. Mar. 31, 2008) (holding that admission of evidence establishing prior injuries caused by electrical wires suspended above railroad tracks was admissible in a case in which plaintiff was injured by the same). Prior accidents must also be temporally proximate to the incident in the case before the court. Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 298 (6th Cir. 2007). No bright line exists to determine when the age of a prior accident renders it stale, however, courts have generally excluded accidents that are more than a few years old. See, e.g., Surles, 474 F.3d at 298 (upholding exclusion of prior accidents that were over four years old); Hicks v. Six Flags over Mid-Am., 821 F.2d 1311, 1315-16 (8th Cir. 1987) (same with respect six-year-old accident); In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989, No. MDL-817, 1991 WL 279005, at *5-6 (N.D. Ill. Dec. 26, 1991) (same with respect to fifteen- and seventeen-year-old incidents); compare Jones v. Otis Elevator Co., 861 F.2d 655, 661-62 (11th Cir. 1988) (upholding admission of 18-month-old prior accident).

In the present case, a prior collision occurred between a train and an automobile in the mid-1990s at the private crossing where Erdman was killed.[2]

---

[2]The precise date of the accident does not appear in the record.

(Doc. 71, app. 9 at 24.)  Both accidents occurred during daylight hours, and both involve a victim driving a vehicle across the railroad tracks in the same direction. (Id. at 24-25.)  Both ended with the death of the driver.  (Id.; Doc. 71, app. 8 at 54-55.)

Despite these similarities, evidence of the prior accident will be excluded. The mid-1990s accident occurred at least ten years before the collision that killed Erdman.  The long hiatus renders it too remote to provide defendants with relevant notice of the danger that Erdman encountered.  Further, the record contains insufficient detail to compare the two incidents meaningfully.  The instant case implicates the sight distance available to Erdman as she approached the railroad tracks, and plaintiff predicates liability upon vegetation near the crossing that allegedly obstructed Erdman's view.  Plaintiff has identified no evidence about the role of such factors in the prior collision.  The record does not document the length of the sight distances available to the prior accident victim, nor is there a description of the vegetation surrounding the crossing during the mid-1990s.[3] Moreover, it is unclear whether the train was traveling north at the time of the prior accident, as it was when Erdman entered the crossing.  If the former train were, in fact, moving south, the prior accident could not fairly have alerted defendants of the dangers posed by a drivers' inability to spot a train moving in the opposite

---

[3] Pictures taken on the day of Erdman's accident depict numerous deciduous trees with full leafage surrounding the crash site.  The record does not identify the season of the year during which the prior accident occurred.  Obviously, if it happened during midwinter, the trees would have been bare, potentially providing the victim with much lengthier sight distances.  The lack of information regarding vegetation precludes a germane comparison with Erdman's collision.

direction. The lack of factual detail regarding the former accident precludes a finding that the it should have alerted defendants to the risk of a collision under the circumstances of the instant case. The evidence is therefore properly excluded for lack of relevance.

The evidence would also unduly prejudice defendants because it could cause a jury to conclude that the prior accident occurred under analogous circumstances despite a lack of record evidence to that effect. This prejudice substantially outweighs the probative value of the ambiguous circumstances surrounding the prior incident. Evidence of the prior accident will therefore be excluded pursuant to Rules 401 and 403.

### C. Jerry Marcum's Testimony

Defendants challenge the relevance of the testimony of Marcum, a Norfolk Southern supervisor responsible for training locomotive engineers. Plaintiff has proffered Marcum as a lay witness. At Marcum's deposition, he testified that he trains engineers to sound the whistle at all public and private crossings and that this training is "universal . . . across the [Norfolk Southern] system." (Doc. 71, app. 11 at 10, 13.) Defendants contend that this testimony is irrelevant and prejudicial because the engineers operating the train that struck Erdman were employees of Delaware & Hudson/Canadian Pacific Railway Company ("Canadian Pacific").

The relevance of Marcum's testimony is heavily dependent upon the evidentiary presentations offered at trial. It may be relevant to a variety of issues,

including the standards to which Norfolk Southern holds engineers operating its locomotives, its relationship with Canadian Pacific Railroad, and the extent to which Norfolk Southern exercised control over the Canadian Pacific engineers operating its locomotive.  However, it is presently unclear whether the parties will significantly contest these issues at trial or whether Marcum's testimony would result in undue prejudice to Norfolk Southern by conflating its training standards with those of Canadian Pacific.  The court will therefore defer ruling on defendants' objection to Marcum's testimony.

### D. Testimony about the Standard of Care when a Locomotive Approaches a Private Crossing

Finally, defendants move to exclude all testimony about the duty that a railroad owes to sound a whistle when approaching a private crossing.  Defendants contend that Pennsylvania law imposes no duty to sound a horn under these circumstances unless the train's crew apprehends a danger ahead.  They seek to exclude testimony that the train operators should have sounded the horn prior to perceiving Erdman's vehicle enter the crossing.

Defendants' motion must be denied because it misconstrues the duty of care that a railroad owes to individuals approaching a private crossing.  Although "[t]he high degree of care as to signaling . . . required of [a] . . . railway at a public crossing is not always required at a private crossing where the danger of injury is less," the railway is nevertheless "bound to the exercise of *care commensurate with the danger of the particular situation*." Kuhns v. Conestoga Traction Co., 138 A. 838, 839 (Pa.

1927) (emphasis added) (quoting King v. Pittsburgh H., B. & N.C. Ry. Co., 89 A. 577, 577 (Pa. 1914)). This duty requires engineers to blow a warning signal when they perceive a vehicle enter a railroad crossing; however, it may also require them to do so in the absence of a vehicle depending upon the circumstances of a particular case. Kuhns, 138 A. at 839; Tomlinson v. Nw. Elec. Serv. Co. of Pa., 151 A. 680, 681-82 (Pa. 1930) (reiterating that an engineer must exercise care "commensurate with the danger" and upholding a plaintiff's verdict because the "the *surroundings called for great watchfulness* by both the owner of the automobile and the motorman" (emphasis added)). The legal standard governing liability for the failure to sound a horn at a private crossing is that of the ordinary reasonable person under the circumstances. Kuhns, 138 A. at 839; 3A LISA A. ZAKOLSKI, SUMMARY OF PENNSYLVANIA JURISPRUDENCE 2D TORTS § 42:19 (2005) ("[T]he licensee of a private crossing is entitled to expect the railroad company to use reasonable care for his or her protection . . . ."). Hence, the diminished standard of care that Kuhns describes *generally* for private crossings derives, in part, from the lesser traffic volume typically associated with such crossings. Scholl v. Phila. Suburban. Transp. Co., 51 A.2d 732, 735 (Pa. 1947) ("Because of the naturally greater use of public crossings, the degree of care required of a trolley operator at such a crossing is, of course, higher than that required at private crossings."). A *particular* private crossing may require a greater degree of care if the factual circumstances surrounding it would cause the ordinary reasonable person to exercise greater vigilance when approaching the crossing.

In light of this negligence standard, plaintiff may present evidence that defendants failed to act with due care. The motion to exclude evidence about defendants' duty to sound the locomotive's horn will be denied.

**E.     Conclusion**

Defendants' motion will be granted with respect to the prior accident that occurred in the mid-1990s and will be denied with respect to testimony about defendants' duty to sound the whistle while approaching the railroad crossing. Evidence concerning vegetation removal will be excluded from plaintiff's case-in-chief, and he will be instructed to request a sidebar conference prior to introducing it on cross-examination. The objections to Marcum's testimony will be deferred until trial.

An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     January 27, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY L. KROH**, administrator of the estate of April M. Erdman, | : | CIVIL ACTION NO. 1:07-CV-0686 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **NORFOLK SOUTHERN RAILWAY COMPANY** and **NORFOLK SOUTHERN CORPORATION**, | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 27th day of January, 2009, upon consideration of defendants' motion in limine (Doc. 55), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion is GRANTED in part, DENIED in part, and DEFERRED in part as follows:

1. The motion is DEFERRED to the extent that challenges the testimony of Jerry Marcum and Gregory Bell. Defendants shall be permitted to renew their objection to Jerry Marcum's testimony at trial and to renew their objection to Gregory Bell's testimony at the hearing to be held during the week of trial under <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993). Failure to renew these objections shall be deemed a waiver thereof.

2. The motion is GRANTED in part and DEFERRED in with respect to vegetation removal surrounding the railroad crossing as follows:

   a. The motion is GRANTED to the extent that it seeks to exclude such evidence from plaintiff's case-in-chief.

   b. The motion is DEFERRED to the extent that it seeks to exclude such evidence from plaintiff's cross-examination. Plaintiff's counsel shall request a sidebar conference before presenting evidence of vegetation removal to impeach testimony pertaining to defendants' control over the vegetated premises or the infeasibility of removal.

3. The motion is GRANTED to the extent that it seeks to exclude evidence of the prior accident that occurred at the crossing in the mid-1990s.

4. The motion is DENIED to the extent that it seeks to exclude evidence regarding defendants' duty to sound the locomotive's horn under the circumstances that led to the collision with decedent's vehicle.


                        S/ Christopher C. Conner
                        CHRISTOPHER C. CONNER
                        United States District Judge